**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| **LINDSEY HARMON, MARIBETH BORROUGHS, AND SEUNGHUN KIM,** individually and on behalf of all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> **UPONOR INC.,** <br><br> *Defendant.* | No. 0:26-cv-01140 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Lindsey Harmon, Maribeth Borroughs, and Seunghun Kim, by and through counsel, bring this Class Action Complaint against Defendant Uponor Inc. ("Uponor" or "Defendant") on behalf of themselves and all others similarly situated who own or owned properties in Texas, Arizona, and Georgia in which cross-linked polyethylene AquaPEX pipes ("PEX Pipes") designed and manufactured after January 1, 2010 by Uponor and thereafter distributed, marketed, and sold by Uponor are or were installed.[1] Plaintiffs, upon personal knowledge as to their own actions and their counsel's investigation as to all matters, alleges as follows:

## INTRODUCTION

1.    Uponor's defective cross-linked polyethylene plumbing pipes (herein "PEX Pipes") manufactured or distributed by Defendant Uponor Inc. ("Uponor" or "Defendant").

---

[1] The "Class" is defined in paragraph 63.

1

The PEX Pipes which suffer from undisclosed design and/or manufacturing defects that inevitably cause them to fail prematurely and other property in which they are installed.

2.      Specifically, the PEX Pipes are prone to premature oxidative degradation, which causes cracking, leaking, and other failures of the PEX Pipes well before the end of their expected service life. Hot water exposure accelerates this oxidative process, yet the PEX Pipes lack adequate antioxidative protection necessary for long-term durability. This lack of adequate protection allows rapid oxidation under hot-water conditions, resulting in premature degradation and failure. Nevertheless, Uponor advertises its PEX Pipes as suitable for high-temperature applications.

3.      Uponor uses the "Engel" method to manufacture its PEX Pipe. PEX manufactured using the Engel method is known as PEX-A. To achieve cross-linking by the Engel method, the manufacturer uses a combination of pressure and high temperature during extrusion of the PEX Pipe.

4.      When oxidation progresses in Uponor's PEX Pipes, the polyethylene pipe material degrades, leading to surface embrittlement, cracking, and the release of water that causes significant damage to surrounding property and/or prevents the plumbing system from functioning as intended. Because PEX Pipes are frequently installed within walls, when the Pipes crack and leak, the leakage is concealed and typically goes undetected until visible signs of damage—such as dampness or mold growth—appear externally on walls or other areas of the structures in which they are installed.

5.      Uponor has manufactured and advertised its PEX Pipes for use in plumbing systems throughout the United States. It has repeatedly represented that consumers should trust Uponor to provide high quality PEX Pipes "designed to last a lifetime and more." Uponor further represents that the company has over 50 years of industry experience, with more than 6 billion meters of Uponor PEX Pipes having been installed worldwide, suggesting that it is an industry leader in the manufacture of potable water pipes. It has also marketed that its PEX Pipes are suitable for use in domestic hot water recirculation systems,[2] with the AquaPEX red coils being marketed specially for use in "hot domestic potable water distribution."[3]

6.      Uponor's website represents that its PEX Pipes have "[l]ife expectancy well over 50 years,"[4] that its PEX Pipes are the highest quality PEX tubing available, and that its cross chemical bonding process gives the Pipes their "superior characteristics."

7.      Contrary to these affirmative statements, the PEX Pipes prematurely fail and leak in as early as seven (7) years after installation because of the design and/or manufacturing defects from which they suffer, as described herein. Defendant knew or should have known that the PEX Pipes were not suitable for use as water-carrying plumbing systems—particularly as a carrier of hot water.

---

[2] https://www.uponor.com/en-us/products/pex-pipe-and-rings/aquapex-white/uponor-aquapex-white-coils

[3] https://www.uponor.com/en-us/products/pex-pipe-and-rings/aquapex-color/uponor-aquapex-red-coils

[4] https://www.uponor.com/en-en/products/drinking-water-delivery/plastic-pipe-system-with-pex-pipes

8.      Before manufacturing, advertising, and/or selling the PEX Pipes, Uponor failed to take appropriate steps to ensure that its products were safe for their intended use.

9.      Uponor failed to disclose this material information to Plaintiffs and members of the Class (as defined in paragraph 63).

10.     The PEX Pipes' defects have caused plumbing systems to catastrophically fail and release water, which has caused and will continue to cause Plaintiffs and the Class to incur damages through no fault of their own.

11.     Plaintiffs seek relief for damages sustained by Plaintiffs and members of the Class that were caused by Uponor's defective PEX Pipes used in Plaintiffs' and Class members' homes and other structures. They seek relief for strict liability, negligence, and unjust enrichment, as well as declaratory and injunctive relief, as described below.

## PARTIES

### Plaintiff Lindsey Harmon

12.     Plaintiff Lindsey Harmon ("Harmon") is a citizen of the State of Texas and a resident of Dickinson, Texas. As a result of Uponor's conduct described herein, Harmon has been injured.

13.     Harmon's home in Dickinson was constructed, including the installation of Uponor PEX Pipes, in or around 2018. Upon the completion of construction, Harmon moved into her new home in Dickinson and began using it as her primary residence.

14.     In April 2025, Harmon experienced a water leak in the Uponor PEX Pipes, located in the ceiling of her kitchen above the refrigerator. Below are photographs of the leak in the ceiling and the defective Uponor PEX Pipe in Harmon's home:

4







15.    Upon discovering the leak, Harmon called a plumber to inspect it and the resultant damage. The plumber informed her that the PEX Pipe itself had cracked, causing the leak. The plumber, in his inspection notes, stated that the "leak occurred due to the colored pex pipe installed that is known to react to the water minerals due to the colored coat in the pipe, fitting itself was not leaking."

16.    Harmon experienced significant ceiling damage due to this leak. Below is a close-up photograph of the pipe, with an arrow pointing to the area of the crack:



17.    Harmon has suffered losses as a result of Defendant's defective PEX Pipes, including, but not limited to, out-of-pocket costs associated with the plumbing failure and the repair of damage caused by the leak.

18.    Plaintiff has already incurred substantial monetary damages and could potentially incur damages of tens of thousands of dollars more if her PEX Pipes have additional leaks.  Harmon, seeking to protect against future leaks, received an estimate of

approximately $8,000 to replumb her entire home to replace the defective Uponor PEX Pipes.

**Plaintiff Maribeth Burroughs**

19. Plaintiff Maribeth Burroughs ("Burroughs") is a citizen of the State of Arizona, and currently resides in Buckeye, Arizona. As a result of Uponor's conduct as alleged herein, Burroughs has been injured.

20. Burroughs' home was constructed, including the installation of Uponor PEX Pipes, in or around 2012.

21. Ms. Burroughs bought the home in January 2025 and began using it as her primary residence.

22. In February 2025, Burroughs observed a leak from the Uponor PEX Pipes located in the master bathroom, resulting in damage to the bathroom walls and ceiling.



23.    Burroughs called a plumber to inspect the water leak and resultant damage. Upon inspection, the plumber informed Burroughs that the PEX Pipe in the master bathroom had cracked and leaked.

24.    The below photograph depicts the crack in the PEX Pipe that caused the leak in Burroughs' home:



25.    As a result of the leak, Ms. Burroughs had to replace the failed area of PEX Pipe and repair the ceiling and wall in her master bathroom. Below is a photograph of some of the repair work necessitated by the leak:



26.    In addition to the PEX Pipe that leaked, the plumber found five (5) other Uponor PEX Pipes in Burroughs' home that were nearing failure. As a result, and to avoid further damage to her home, Burroughs was forced to re-pipe her entire house, replacing the defective Uponor PEX Pipes. Below are photographs of some of the work necessitated by re-piping work performed in Burroughs' home.

11

 

27.     Burroughs has already incurred out-of-pocket losses in excess of $18,000 to repair the PEX Pipe leak and replace the rest of the defective Uponor PEX Pipes in her home.

**Plaintiff Seunghun Kim**

28.     Plaintiff Seunghun Kim ("Kim") is a citizen of the State of Georgia and a resident of Holly Springs, Georgia. As a result of Uponor's conduct described herein, Kim has been injured.

29.     Kim's home in Holly Springs was constructed, including the installation of Uponor PEX Pipes, approximately in or around 2017.

30.     Kim purchased and moved into the home in Holly Springs in 2021 and began using it as his primary residence. Below is a picture of the Uponor PEX piping in Kim's home:



31.     In July 2025, Kim experienced his first water leak in the Uponor PEX Pipes located in the walls of the home's pantry area. Subsequently, Kim experienced five (5) more leaks in his Uponor PEX Pipes, further damaging the pantry area including the walls, insulation, and flooring. These leaks also damaged the bathroom ceiling. Below are photographs of the pantry wall and the defective Uponor PEX Pipe in Kim's home:

 

32.     Upon discovering each of the leaks, Kim called a plumber to inspect it and the resultant damage. The plumber informed him that the PEX Pipes had pinhole cracks, like the one depicted in the picture above, causing the leaks.

33.     With each leak, Kim had to replace the Uponor PEX Pipes with PEX pipes from a different manufacturer.

34.     Kim has suffered losses as a result of Defendant's defective PEX Pipes, including, but not limited to, out-of-pocket costs associated with the plumbing failures—the replumb of sections of PEX Pipes that leaked and repair of damage to the home caused by the leaks.

35.     Plaintiff Kim has already incurred substantial monetary damages and could potentially incur damages of tens of thousands of dollars more if his Uponor PEX Pipes continue to have leaks.

**Defendant Uponor Inc.**

36.     Defendant Uponor Inc. is a privately held corporation, incorporated in Illinois, with its principal place of business located at 5925 148th Street West, Apple Valley, Minnesota 55124. Uponor Inc. is a subsidiary of Uponor North America Inc., which is incorporated in Delaware. Uponor Corp., based in Finland, is Uponor's ultimate parent company. In November 2023, Uponor Corp. was acquired by Georg Fischer Ltd., a Swiss corporation, bringing Uponor within the GF Group under a new division called "GF Uponor."

37.     Uponor designs, manufactures, distributes, markets, advertises, and/or sells the Uponor PEX Pipe directly or indirectly to the consuming public throughout the United States.

## JURISDICTION AND VENUE

38.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs and the action is a class action in which some class members are citizens of states different than Defendant.

39.     This Court has personal jurisdiction over Defendant because Uponor has its principal place of business in the District and also conducted substantial business, including distributing and marketing the PEX Pipes, within the District.

15

40.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Uponor has its principal place of business in this District and the District is where a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred.

## COMMON FACTUAL ALLEGATIONS

41.     Uponor designs, manufactures, markets, and sells crosslinked polyethylene pipes and has done so for decades.

42.     Uponor states on its website that "[w]ith more than 40 years of proven performance, and 17 billion feet of pipe installed worldwide, Uponor is the leader in flexible polymer piping solutions with the industry's most tested, listed, and code-approved PEX piping product on the market."[5]

43.     Uponor manufactures, markets, and sells its PEX Pipes under the trade name AquaPEX.

44.     Uponor markets its PEX Pipes as "offering the greatest flexibility, durability, kink repairability, and corrosion/scale resistance to maximize quality and performance."[6] The PEX Pipes were thus intended by Uponor to be used as a reliable and durable plumbing solution.

***The Defect***

45.     Uponor's PEX Pipes contain a fundamental defect: they are prone to oxidative degradation, which causes embrittlement, cracking, and premature failure well

---

[5] https://www.uponor.com/en-us/solutions/uponor-pex

[6] *Id.*

before the end of their expected service life. In general, PEX piping is expected to have an estimated service life of more than 50 years.[7]

46.     Uponor manufactures its PEX Pipes using the Engel method (*i.e.*, PEX-A), a high-temperature extrusion process that cross-links polyethylene while it is above its melting point. This process exposes the material to heat and oxygen, initiating oxidation reactions during production.

47.     When polyethylene reacts with oxygen, it forms oxidized polyethylene, which differs in density, surface tension, and chemical structure. The result is a brittle material with significantly reduces the PEX Pipes' resistance to mechanical stress.

48.     As oxidation progresses, the pipe surface shrinks and develops imperfections, such as mud cracking, pitting, and crazing—a network of fine surface fissures. These flaws act as stress concentrators and evolve into deeper cracks that compromise the pipe wall.

49.     The degradation weakens the polymer structure, reducing its strength and flexibility. Normal operating conditions—such as exposure to hot, oxygenated water— accelerate this deterioration.

50.     The interior surface of the PEX Pipes is particularly vulnerable, as it is in regular contact with hot water. Failures often originate on the inside due to inadequate

---

[7] Indeed, in current literature, Uponor Corp., Defendant's Finnish parent company, states that Uponor PEX "pipe has an estimated service life of more than 50 years." https://www.uponor.com/getmedia/f58885a3-89c4-4694-9fae-cf6ff2ecc613/uponor-ti-pex-piping-systems-en-1118689-v1-ja?sitename=UponorInternational&disposition=attachment. *See also* https://brandportal.uponor.com/m/7f2a7ca3918eecd5/original/TI-Aqua-PEX-piping-system-EN-1135536-v3.pdf

antioxidant protection, which leaves the material unprotected once the stabilizers are depleted.

51.     Antioxidants, added during manufacturing to slow oxidation, are prematurely consumed by the Engel method's high heat and oxygen exposure. Without sufficient antioxidant reserves, the pipe begins to embrittle soon after installation.

52.     This condition is worse in Uponor's red and blue AquaPEX pipes, which are color-coded using a flame treatment. This process further depletes antioxidants on the PEX Pipes' exterior, making them more susceptible to oxidative damage.

53.     As a result, the color-coated surface experiences advanced embrittlement, visible as cracking, pitting, and surface crazing. The degradation renders the pipe incapable of withstanding the expansion and compression stresses required for installation using Uponor's own fitting system.

54.     Failures in the red and blue PEX Pipes frequently occur adjacent to the compression ring of expansion fittings, where mechanical stress is concentrated.

55.     The material beneath the flame-treated surface is also embrittled and often exhibits incipient cracks—early-stage fractures that grow over time under normal thermal and pressure cycling.

56.     The combination of internal and external oxidative degradation causes surface defects to propagate into full-wall cracks, leading to leaks, water damage to the structures in which the PEX Pipes are installed, and full system failure.

57.     Uponor knew or should have known of the PEX Pipes' defects and potential for oxidative damage and failure before distributing the PEX Pipes into the consumer

18

marketplace. To the extent that Uponor did not know of the defects before it started selling the PEX Pipes, as soon as Uponor became aware of the defects Uponor should have ceased selling the PEX Pipes and warned the consuming public. Uponor did not.

58.     Plaintiffs and Class members have a reasonable expectation that the PEX Pipes would have a useful life of at least 50 years. However, because of the defects, the PEX Pipes fail prematurely, and leak in as early as seven years after installation (the experience of plaintiff Harmon).

## **TOLLING OF THE STATUTE OF LIMITATIONS**

59.     Plaintiffs and Class members had no knowledge of the true, latent defect in Uponor PEX Pipes, which occurred in a part or parts of the PEX Pipes not visible to consumers. Plaintiffs and Class members could not have discovered through the exercise of reasonable diligence that the PEX Pipes in their homes were defective within the time-period of any applicable statutes of limitation.

60.     Throughout the time period relevant to this action, Uponor has been aware that the PEX Pipes are defective, resulting in water leaking from the PEX Pipes and causing substantial damage to the Plaintiffs and Class members' homes. However, Uponor concealed from and failed to disclose to Plaintiffs and other Class members vital information about the PEX Pipes defects, even though Uponor could have disclosed the existence of the defects through a recall, individual correspondence, media release, or by other means. Uponor also capitalized on the concealment further by selling defective replacement parts. Accordingly, any applicable statute of limitation is tolled.

61.    Plaintiffs and Class members justifiably relied on Uponor to disclose the defects in the PEX Pipes because the defect was latent, hidden, and otherwise not discoverable through reasonable efforts by Plaintiffs and Class members. Thus, the running of all applicable statutes of limitations have been suspended with respect to any claims of Plaintiffs and Class members by virtue of the fraudulent concealment doctrine.

62.    Uponor was and remains under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the defective PEX Pipes.

## CLASS ACTION ALLEGATIONS

63.    Plaintiffs bring this lawsuit individually and as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3) on behalf of subclasses of individuals and entities residing in each of the states in which a named Plaintiff resides (each a "State Subclasses"). Specifically, the State Subclasses consist of:

**Texas Subclass**

All persons and entities that own or owned properties in Texas in which Uponor PEX Pipes manufactured after January 1, 2010 are or were installed, that suffered property damage from a PEX Pipes leak, and that did not make a claim to Uponor.

**Arizona Subclass**

All persons and entities that own or owned properties in Arizona in which Uponor PEX Pipes manufactured after January 1, 2010 are or were installed, that suffered property damage from a PEX Pipes leak, and that did not make a claim to Uponor.

**Georgia Subclass**

All persons and entities that own or owned properties in Georgia in which Uponor PEX Pipes manufactured after January 1, 2010 are or were installed,

that suffered property damage from a PEX Pipes leak, and that did not make a claim to Uponor.

Collectively, the State Subclasses are the "Class."

64.    Excluded from the Class are Defendant and its subsidiaries and affiliates, as well as their executives, board members, employees, and legal counsel; and the judges and all other Court personnel to whom this case is assigned, and their immediate families.

65.    Plaintiffs reserve the right to amend or modify the Class definition following discovery and prior to class certification.

66.    Fed. R. Civ. P. 23(a)(1). The Class is so numerous that the joinder of all members is not feasible or practicable. While the precise number of Class members has not been identified at this time, there are at least thousands of properties in which Uponor PEX Pipes have been installed.

67.    Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. Without limitation, these common questions of law and fact include:

a)    Whether Defendant's PEX Pipes are defective;

b)    Whether Defendant's PEX Pipes were defectively designed and/or manufactured;

c)    Whether the design and/or manufacturing defects in Defendant's PEX Pipes result in the PEX Pipes being prone to degradation, embrittlement, cracking, leaking, and failure to perform;

21

d)    Whether Defendant knew or should have known of the defective nature of its PEX Pipes;

e)    Whether Defendant knew or should have known of the defects in the PEX Pipes prior to putting them in the stream of commerce;

f)    Whether Defendant failed to warn consumers that its PEX Pipes are defective;

g)    Whether Defendant made fraudulent, false, deceptive, and/or misleading statements in connection with the sale of its PEX Pipes in its product literature, including those relating to standards and reliability;

h)    Whether Defendant omitted material information when it sold its PEX Pipes;

i)    Whether Defendant exercised reasonable care in the design, manufacture, testing, marketing, and selling of its PEX Pipes;

j)    Whether Defendant owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the design, manufacture, testing, marketing, and selling of its PEX Pipes;

k)    Whether Defendant breached its duty to Plaintiffs and the Class by designing, manufacturing, testing, marketing, and selling to Plaintiffs and the Class defective PEX Pipes;

l)    Whether Defendant breached its duty to Plaintiffs and the Class by failing to promptly remove the defective PEX Pipes from the marketplace or take other remedial action;

m)    Whether Defendant's PEX Pipes fail prematurely;

n)       Whether Defendant knowingly sold or allowed its PEX Pipes to continue to be distributed after it knew the PEX Pipes fail prematurely;

o)       The appropriate nature of class-wide equitable relief;

p)       The appropriate measurement of restitution and/or measure of damages to award to Plaintiffs and members of the Class; and

q)       Whether the Defendant should be required to notify all Class members about its defective PEX Pipes.

These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class.

68.     Fed. R. Civ. P. 23(a)(3) and (a)(4). Plaintiffs' claims are typical of those of the members of the Class and Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions. Plaintiffs and their counsel will prosecute this action vigorously.

69.     Fed. R. Civ. P. 23(b)(2). Plaintiffs and members of the Class have suffered and will continue to suffer harm and damage as a result of Uponor's unlawful and wrongful conduct, including its failure to (1) issue a proper and adequate recall of the defective Uponor PEX Pipes; and (2) notify Plaintiffs and Class members of the defects in the PEX Pipes and that the defects create a substantial risk that water will leak from the PEX Pipes and cause damage to the property of Plaintiffs and the Class.

70.     Fed. R. Civ. P. 23(b)(3). Plaintiffs and members of the Class have suffered and will continue to suffer harm and damages as a result of Uponor's unlawful and

wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent class certification, Class members would likely find the cost of litigating their claims prohibitively expensive and would therefore have no effective remedy at law. Because of the relatively small size of Class members' individual claims, it is likely that few Class members could afford to seek legal redress for Uponor's misconduct and the damages caused by the defects in the PEX Pipes. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will also promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**
**Strict Liability – Design Defect**
(On Behalf of Plaintiffs Burroughs and Kim and the Arizona and Georgia Subclasses)

71.    Plaintiffs incorporate by reference paragraphs 1-70 as though fully set forth herein.

72.    Plaintiffs Burroughs and Kim bring this cause of action on behalf of themselves and on behalf of members of the Arizona and Georgia Subclasses against Defendant.

73.    Uponor designed the PEX Pipes and sold the PEX Pipes into the stream of commerce.

74.    The PEX Pipes were defective in their design and unreasonably dangerous to consumers and users in that they were susceptible to premature degradation, embrittlement, and cracking due to their design, causing leaks that damaged homes and

24

personal property. The PEX Pipes were defective when they left Uponor's possession or control.

75. At the time Plaintiffs and the Class suffered property damage, the PEX Pipes had been installed and were being used in a manner reasonably foreseeable by Defendant.

76. At the time the PEX Pipes were installed in Plaintiffs' and Class members' homes and other structures, they were not in a condition contemplated by reasonable users and consumers of plumbing products.

77. The damages and losses incurred by Plaintiffs and Class members would have been prevented by a feasible alternative design.

78. The damages and losses incurred by Plaintiffs and Class members were proximately cause by the defective design of the PEX Pipes.

## SECOND CAUSE OF ACTION
### Strict Liability – Manufacturing Defect
(On Behalf of Plaintiffs Burroughs and Kim and the Arizona and Georgia Subclasses)

79. Plaintiffs incorporate by reference paragraphs 1-70 as though fully set forth herein.

80. Plaintiffs Burroughs and Kim bring this cause of action on behalf of themselves and on behalf of members of the Arizona and Georgia Subclasses against Defendant.

81. Uponor manufactured the PEX Pipes and sold the PEX Pipes into the stream of commerce.

82. The PEX Pipes were defectively manufactured and posed substantial likelihood of harm when they left Uponor's possession or control.

25

83.     The PEX Pipes were unreasonably dangerous to consumers and users in that they were susceptible to premature degradation, embrittlement, and cracking due to their manufacture, causing leaks that damaged homes and personal property.

84.     The PEX Pipes did not operate as intended. At the time Plaintiffs and the Class suffered property damage, the PEX Pipes had been installed and were being used in a manner reasonably foreseeable by Defendant.

85.     At the time the PEX Pipes were installed in Plaintiffs' and Class members' homes and other structures, they were not in a condition contemplated by reasonable users and consumers of plumbing products.

86.     The damages and losses incurred by Plaintiffs and Class members were proximately cause by the defective manufacturing of the PEX Pipes.

### THIRD CAUSE OF ACTION
**Strict Liability for Failure to Warn**
(On Behalf of Plaintiffs Burroughs and Kim and Arizona and Georgia Subclasses)

87.     Plaintiffs incorporate by reference paragraphs 1-70 as though fully set forth herein.

88.     Plaintiffs Burroughs and Kim bring this cause of action on behalf of themselves and on behalf of members of the Arizona and Georgia Subclasses against Defendant.

89.     Uponor designed, manufactured, marketed, sold, and distributed the PEX Pipes to Plaintiffs and the Class.

90.     The PEX Pipes were unreasonably dangerous to consumers and users in that they were susceptible to premature degradation, embrittlement, and cracking due to their design and manufacture, causing leaks that damaged homes and personal property.

91.     Uponor knew, or should have known, that the PEX Pipes contained a nonobvious danger in their design and manufacture. Uponor knew, or should have known, that the PEX Pipes were highly susceptible to failure during ordinary use, and that owners of homes and other structures would not replace their PEX Pipes without an instruction to do so.

92.     Uponor, after learning that its PEX Pipes would degrade and fail, had a post-sale duty to warn consumers of the possibility that leaking and water damage could result from the failure of its PEX Pipes, even when used for their intended purpose.

93.     Uponor failed to inform Plaintiffs and the Class of the PEX Pipes' susceptibility to failure. Uponor failed to warn consumers that it was necessary to replace the PEX Pipes, even if the PEX Pipes had not yet failed and leaked. Had Plaintiffs and the Class been adequately warned, they would have taken steps to avoid damages by replacing the PEX Pipes or by not purchasing them, or structures in which they were installed, altogether.

94.     Accordingly, Uponor is strictly liable for the damage and losses that the defective PEX Pipes have caused Plaintiffs and the Class.

**<u>FOURTH CAUSE OF ACTION</u>**
**Negligence**
(On Behalf of the Plaintiffs and the State Subclasses)

95.     Plaintiffs incorporate by reference paragraphs 1-70 as though fully set forth herein.

96.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of members of the State Subclasses against Defendant. Plaintiff Harmon specifically brings this cause of action on behalf of herself and the Texas Subclass to the extent any negligence theories are not subsumed by the Texas Products Liability Act (*See* Count V, *infra*.)

97.     Defendant owed Plaintiffs and the Class a duty to exercise reasonable and ordinary care in the design, formulation, testing, manufacture, marketing, and sale of the PEX Pipes, so that the PEX Pipes would be safe for ordinary use and would not prematurely fail and damage the homes and other structures in which they were installed.

98.     Defendant breached this duty in that it recklessly, wantonly, and/or negligently designed, formulated, tested, manufactured, marketed, and sold PEX Pipes that were unfit for their intended purpose.

99.     Defendant failed to properly test and/or evaluate the PEX Pipes to ensure they would not prematurely fail when used for their intended purpose. The PEX Pipes were sold in the market without adequate warnings, adequate inspection and testing, and adequate reporting regarding the results of quality control testing. Moreover, even after being notified of that the PEX Pipes were prematurely failing and leaking, Uponor took no action to cure its breaches of its duty to exercise ordinary care, thus requiring Plaintiffs and the Class to take corrective action at their own cost and expense to avoid continued failure of the PEX Pipes, as well as further damage to their homes and personal property.

100. Defendant failed to warn of the potential hazards associated with the use of its PEX Pipes and negligently failed to issue a notice of the hazards or recall the PEX Pipes, resulting in additional damage to the homes and property and Plaintiffs and the Class.

101. As a direct and proximate result of Uponor's negligence, carelessness, and breaches of its duty of reasonable and ordinary care, Plaintiffs and the Class have suffered damage to their homes and personal property.

102. As a direct and proximate result of Defendant's breaches, Plaintiffs and the Class have incurred economic harm including the cost of plumbing inspection, cost of repairing and replacing the PEX Pipes, cost of repairing damage to their homes and personal property due to leakage, diminution in the value of their homes, and other incidental expenses associated with the failure of Defendant's PEX Pipes, all of which damages were foreseeable by Defendant.

### FIFTH CAUSE OF ACTION
**Violation of Texas Products Liability Act ("TPLA")**
**Tex. Civ. Prac. & Rem. Code. Ann. §82.001, *et seq.***
(On Behalf of Plaintiff Harmon and the Texas Subclass)

103. Plaintiff Harmon incorporates by reference paragraphs 1-70 as though fully set forth herein.

104. Harmon brings this cause of action on behalf of herself and on behalf of members of the Texas Subclass against Defendant.

105. This product liability claim under the TPLA includes the following theories: strict liability design defect, strict liability manufacturing defect, strict liability failure to warn, and negligence, as well as any other applicable theories.

29

106. Uponor designed, manufactured, assembled, distributed, marketed, and sold Uponor PEX Pipes that were installed in Harmon's home in Dickinson, Texas and the homes of members of the Texas Subclass.

107. The Uponor PEX Pipes were expected to, and did, reach Harmon's home and the homes of members of the Texas Subclass without substantial change in the conditions in which they were designed, manufactured, assembled, distributed, marketed, and sold by Uponor.

108. The Uponor PEX Pipes were used by Harmon and the members of the Texas Subclass in the manner they were intended to be used.

109. The Uponor PEX Pipes, as designed, manufactured, assembled, distributed, marketed, and sold by Uponor were in a defective condition and were defective and unreasonably dangerous when they left Uponor's possession and/or control.

110. The Uponor PEX Pipes were defective because of the inadequate methods in which they were designed and/or manufactured by Uponor. Further, Uponor failed to provide Harmon and other Texas Subclass members with adequate and sufficient warnings regarding the defect and/or known and foreseeable risks and dangers inherent in Uponor PEX Pipes.

111. The defective Uponor PEX Pipes were not reasonably safe for ordinary and intended use.

112. Harmon and other reasonably expected users of Uponor PEX Pipes, could not, by the exercise of reasonable care, have discovered the defects and/or deficiencies posed by the Uponor PEX Pipes. The defects in Uponor PEX Pipes were non-obvious.

113.    As a direct and proximate result of the defective condition of the Uponor PEX Pipes, Harmon and other Texas Subclass members, suffered property damage and other incidental and consequential damages.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment
(On Behalf of the Plaintiffs and the State Subclasses)

114.    Plaintiffs incorporate by reference paragraphs 1-70 as though fully set forth herein.

115.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of members of the State Subclasses against Defendant.

116.    As the intended and expected result of its wrongdoing, Defendant has profited and benefited from the purchase, by Plaintiffs and members of the Class, of PEX Pipes and homes and other structures in which the PEX Pipes are or were installed. Uponor knowingly and willingly accepted and enjoyed these benefits and profits with knowledge and awareness that, as a result of their misconduct, Plaintiffs and the Class were not receiving products of the quality, nature, fitness, or value that had been represented by Uponor, and that Plaintiffs and the Class, as reasonable consumers, expected.

117.    Uponor knew or should have known that payments received for Plaintiffs' and Class members' PEX Pipes were paid with the expectation that the PEX Pipes would perform as represented and as could reasonably be expected. Instead, the PEX Pipes failed and leaked many years before the end of their reasonable expected service life.

118.    Uponor's retention of these benefits it received from the sale of the PEX Pipes is inequitable and unconscionable. Defendant has been unjustly enriched by its

31

wrongful withholding of benefits from Plaintiffs and members of the Class at the expense of Plaintiffs and members of the Class.

119.   Plaintiffs and members of the Class are entitled to recover from Uponor all amounts wrongfully collected and improperly retained by Uponor, plus interest.

120.   There is no valid, express contract governing the subject matter of the dispute between any Plaintiff or Class member, on the one hand, and Uponor, on the other.

121.   Plaintiffs, on behalf of themselves and members of the Class, seek the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, plus interest, to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

a. Determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above and designating Plaintiffs' counsel as counsel for the Class;

b. Award all actual, general, special, incidental, statutory, or other multiple, punitive, and consequential damages to which Plaintiffs and Class members are entitled, in an amount to be determined at trial;

c. Award pre-judgment and post-judgment interest on such monetary relief;

d.  Grant appropriate injunctive and/or declaratory relief as the Court may deem reasonable. This relief may include, without limitation, any remediation, inspection, notice, and/or other necessary steps to be undertaken with respect to Class members with PEX Pipes on which the defect has not yet manifested;

e.  Award reasonable attorneys' fees and costs; and

f.  Award such other relief that the Court deems appropriate.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the Class, demand a trial by jury on all issues so triable.

Dated: February 6, 2026

/s/John G. Albanese
John G. Albanese, Bar No. 0395882
Joseph C. Hashmall, Bar No. 0392610
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 594-5999
jalbanese@bergermontague.com
jhashmall@bergermontague.com

Lawrence Deutsch*
Jacob M. Polakoff*
Radha Nagamani Raghavan*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
ldeutsch@bergermontague.com
jpolakoff@bergermontague.com
rraghavan@bergermontague.com

* motion for admission *pro hac vice* forthcoming

33

*Counsel for Plaintiffs and the Class*